663 So.2d 194 (1995)
Randel BROWN, Plaintiff-Appellant,
v.
Dale ARDOIN, et al., Defendant-Appellee.
No. 95-256.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
*195 Christopher Brent Coreil, Ville Platte, for Randel Brown.
Chuck Randall West, Mamou, for Dale Ardoin et al.
Before DOUCET, C.J., and YELVERTON, and PETERS, JJ.
PETERS, Judge.
This is a suit by Randel Brown against Dale Ardoin and Linda Young Ardoin for specific performance, attorney fees, and costs under a land purchase agreement entered into by the parties. The Ardoins answered the suit asserting the existence of significant *196 title problems affecting the property which had not been cleared by Brown despite amicable demand. They also reconvened seeking a judgment declaring the purchase agreement null and void, or in the alternative, ordering Brown to perform his obligations under the agreement. In the reconventional demand, the Ardoins also sought damages. The trial court held the agreement null and void and ordered Brown to return a $200.00 deposit to the Ardoins. Brown has appealed.

DISCUSSION OF RECORD
The Ardoins signed a contract on September 30, 1993, agreeing to purchase 13.42 acres of land owned by Brown in Section 47, Township 3 South, Range 1 East, Evangeline Parish, Louisiana. The purchase price was $9,600.00, and Brown signed the purchase agreement on October 6, 1993. The agreement contained the following provision:
In the event title is not valid and cannot in reasonable time and at reasonable expense be made valid, this contract shall be null and void and the deposit shall be immediately returned. A policy of title insurance in the amount of the purchase price by a company qualified to do business in the State of Louisiana at owner's expense would, however, satisfy any objection to such title.
Mr. Ardoin retained Thomas Brumbaugh, an attorney, to perform a title opinion. Brumbaugh was of the opinion that initially there were four defects in the land title which affected its merchantability. Three were resolved to his satisfaction, but the remaining defect, which pertains to one of the boundaries of the property, is the basis of this suit.
Brown acquired the land by an act of sale dated May 18, 1990. That act of sale describes the land in part as "the East one-third (1/3) of 41.81 acres." Subsequent to the purchase, Brown retained Doward Guillory, a registered surveyor, to survey the tract. Guillory's survey, which contains a completion date of March 5, 1992, indicates that the tract is one-third of a 40.26 acre tract and not one-third of a 41.81 acre tract as indicated in the act of sale. Thus, instead of containing 13.94 acres, the Guillory survey concluded the tract contains only 13.42 acres, creating a discrepancy of 0.52 acres between Brown's deed of acquisition and Guillory's survey.
According to Brumbaugh, the acreage discrepancy in itself is not the problem. He was of the opinion the title was unmerchantable because, despite the fact that the purchase agreement purported to transfer the lesser amount, there was still a possibility of litigation concerning the location of the boundary between Brown's tract and that of the property to his immediate west. Specifically, Brumbaugh noted that there was originally an obvious attempt to divide the 41.81 acres into three equal tracts containing 13.94 acres each. Brumbaugh explained that if the owner of the west one-third would demand his full share of the original 41.81 acre tract and Brown or his ancestor-in-title would claim 13.42 acres, the central owner would be left with less than 13.42 acres. Thus, to foreclose the possibility of the owner of the central one-third claiming a part of the land in question, Brumbaugh required a boundary agreement between that owner and Brown to render Brown's title merchantable.
According to Brumbaugh, John R. Deshotels, Sr., is the record owner of the central one-third tract. There is no evidence to the contrary. Brown did produce a boundary agreement of sorts which contained Deshotels' signature. He and Deshotels used a copy of the Guillory survey to effect an agreement. The language and signatures added to the survey appear as follows:
*197
 We the undersigned property owners agree that the boundary
shown on this plat is the boundary between our two properties.
 Thus done and signed this day of
, 1994.
WITNESSES:
Because, in his opinion, it was unclear whether Deshotels signed this document in his individual or corporate capacity, Brumbaugh concluded that the title was still not merchantable. He did not find that D.S.P., Inc. had any ownership interest in the property and therefore the potential for a boundary dispute still existed.
After trial, the trial court issued an "interim judgment" ordering Brown to purchase a title insurance policy in favor of Dale Ardoin within thirty days of rendition of the judgment. The court further ordered that once the title policy was secured, the Ardoins would be obligated to purchase the 13.42 acre tract. The judgment also provided that in the event Brown failed to obtain the title insurance within thirty days, his suit against the Ardoins would be dismissed at his cost. The Ardoins' reconventional demand was rejected. A motion for new trial filed by the Ardoins as to this interim judgment was rejected by the trial court.
Subsequently, Mr. Ardoin filed a rule to show cause why the interim judgment should not be modified to dismiss Brown's claim at his cost. In the rule, he alleged that Brown had not complied with the judgment in that Brown had tendered a commitment for title insurance which excluded coverage for boundary disputes, making the policy useless. The trial court found that since the commitment for title insurance excluded boundary disputes, it did not satisfy the title within the verbiage of the purchase agreement. Thus, the trial court rendered another judgment declaring the purchase agreement null and void and ordering Brown to return a deposit of $200.00. Brown has appealed this judgment.

OPINION
The trial court concluded as fact that a title defect existed because of the potential boundary problem. Brown contends that this finding constituted an advisory opinion and that the trial court erred by rendering such an advisory opinion. A court may not render an advisory opinion. Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697 (La.1993). However, in the instant case, there exists a controversy over whether the title to the tract in question is merchantable. This controversy necessarily entails a determination of whether there is a potential for future litigation concerning the boundary location, not whether the owner of the tract in question would prevail in the event of future litigation. Thus, the trial court's ruling that the title was unmerchantable due to the possibility of future litigation was not an advisory opinion.
Brown also contends that the trial court erred in finding that a defect existed in his title. Specifically, he asserts that at no time has anyone claimed to have a better title, that there has been no showing of defects in the chain of title, and that there have been no boundary disputes. We reject Brown's reasoning in this regard. In a contract to sell, the promisee is not required to accept a title which may reasonably suggest litigation. Young v. Stevens, 252 La. 69, 209 So.2d 25 (1967). Indeed, no one is required to buy a lawsuit, and a person should not be made to accept a title tendered as good, valid and binding unless it is legal in every respect. Id. In Vallery v. Belgard, 379 So.2d 1201 (La.App. 3 Cir.1980), after an immovable property buy-sell agreement was signed, a title examination revealed some uncertainty *198 as to the location of the southwest boundary of the tract, which resulted in questionable title to 0.4738 acres. The plaintiff-buyer refused to complete the sale on the ground that the defendant-seller's title to the property was unmerchantable. The defendant-seller took no curative steps within the time allowed. The trial court found that this defect, although relative to only a small portion of the property, caused doubt as to the boundary line, which could be litigious. The trial court concluded that the title therefore was unmerchantable. This court affirmed the holding that title was unmerchantable and that the plaintiff-buyer was not required to purchase the property.
In the instant case, Brown argues that the owner of the adjacent property signed a boundary agreement thereby curing any boundary defect. However, Deshotels added a corporate designation which calls into question exactly what was intended by his action. The original signature line obviously contemplated that Brown and Deshotels would individually execute the boundary agreement. Deshotels chose to add the corporate designation, and it is equally obvious that some intent was associated with the addition.
A contract is defined as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ. Code art. 1906. If a contract does not meet all formation requirements, it is a nullity. La.Civ.Code art. 2029. A lawful cause for the contract is a formation requirement. La. Civ.Code art. 1966. It follows that the cause of the boundary agreement was elimination of any future disputes over its location. When we interpret a contract, we must determine "the common intent of the parties." La.Civ.Code art. 2045. If one of the parties has no interest in the immovable property, it follows that the party has no reason to obligate himself and the contract therefore contains no cause. La.Civ.Code art. 1967. Thus, if Deshotels intended to sign in his individual capacity, the boundary agreement would be an enforceable contract. If he intended to execute the agreement as agent for the D.S.P., Inc., the agreement would not be enforceable as the corporation has no interest in the property.
We first note that "he who affixes his signature to an instrument is bound thereby." Bohm v. CIT Fin. Servs., Inc., 348 So.2d 132, 134 (La.App. 1 Cir.), writ denied, 350 So.2d 673 (La.1977). Additionally,
When a corporate officer or agent contracts on behalf of the corporation, he has the duty to disclose his representative status and the identity of his principal in order to avoid personal liability under the contract. However, the mere use of a tradename is not necessarily a sufficient disclosure by the individual that he is in fact contracting on behalf of a corporation so as to protect him against personal liability. The facts and circumstances of each case determine whether or not the individual sufficiently disclosed that he was acting in a representative capacity so as to alert the other contracting party that the contract was with a corporation.
Transport Refrigeration of La., Inc. v. D'Antoni, 281 So.2d 469, 471 (La.App. 4 Cir.1973) (emphasis added) (citation omitted).
It requires no citation that Brown bears the burden of proving the validity of a boundary agreement between himself and Deshotels. We are provided with no other information concerning Deshotels' intent in executing the document, and without such, we find no error in the trial court's determination that Brown's title is defective. Brumbaugh did not find that the corporation had any ownership interest in the property. According to Brumbaugh, Brown's attorney indicated that there was possibly some difficulty in correcting this and getting Deshotels' signature. The record does not indicate the nature of this "difficulty." To attempt to determine the effect of Deshotels' corporate designation without additional evidence would be to issue an advisory opinion. This opinion would affect the rights of Deshotels who is not even a party to this litigation. As previously stated, we are precluded from issuing an advisory opinion. Church Point Wholesale Beverage Co., Inc., 614 So.2d 697.

DISPOSITION
For the foregoing reasons, the decision of the trial court is affirmed in all respects. All *199 costs of the appeal are assessed against the plaintiff, Randel Brown.
AFFIRMED.